EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
06/03/2014
CT Log Number 525072710

**TO:**   LaTrisha Charles
BP America Inc.
501 WestLake Park Blvd., Matter: 21714
Vendor: 0080178147
Houston, TX 77079

**RE:**   **Process Served in Florida**

**FOR:**   BP Exploration & Production, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Christopher Bowers, Pltf. vs. BP Exploration & Production Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Attachment(s), Summons, Complaint |
| **COURT/AGENCY:** | Bay County Circuit Court, FL<br>Case # 14426CA |
| **NATURE OF ACTION:** | Environmental Litigation - Government Enforcement Action |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/03/2014 at 11:45 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Christopher P. Bowers<br>315 15th Street<br>Panama City Beach, FL 32413 |
| **REMARKS:** | Please see attached print out from the Florida Department of State which indicates service for BP Exploration & Production Inc. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/04/2014, Expected Purge Date: 06/09/2014<br>Image SOP<br>Email Notification, Malika Herring malika.herring@bp.com<br>Email Notification, Melanie Johnson melanie.johnson@bp.com<br>Email Notification, LaTrisha Charles LaTrisha.Charles@bp.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Donna Moch<br>1200 South Pine Island Road<br>Plantation, FL 33324<br>954-473-5503 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Name                                                    Page 1 of 2



**FLORIDA DEPARTMENT OF STATE**
**DIVISION OF CORPORATIONS**

# Detail by Entity Name

**Foreign Profit Corporation**

BP EXPLORATION & PRODUCTION INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | F10000002367 |
| **FEI/EIN Number** | 341835527 |
| **Date Filed** | 05/20/2010 |
| **State** | DE |
| **Status** | ACTIVE |

**Principal Address**

501 WESTLAKE PARK BLVD
HOUSTON, TX 77079

**Mailing Address**

PO BOX 3092
HOUSTON, TX 77253

**Registered Agent Name & Address**

C T CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

*PleAse Serve at This Address*

**Officer/Director Detail**

**Name & Address**

Title P

DUPREE, JAMES H
200 WESTLAKE PARK BLVD
HOUSTON, TX 77079

Title VP

BRAY, STEVEN L
501 WESTLAKE PARK BLVD
HOUSTON, TX 77079

Title Tax Officer

MANGAN, W T

14-426 CA

DATE: 6/3/14
HOUR: 1145

**SUMMONS**

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant: **BP EXPLORATION & PRODUCTION INC., BP p.l.c., BP AMERICA PRODUCTION COMPANY, BRITISH PETROLEUM A/k/a BP; And all agents and persons acting in concert and participation therewith, Jointly and Severally. Houston Office 501 Westlake Park Boulevard Houston, Tx. 77079**

Each defendant is required to serve written defenses to the complaint or petition on Christopher P. Bowers, plaintiff's attorney, whose address is 315 15th Street, Panama City Beach, Florida 32413, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or

immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on ~~March 31, 2014~~

_____

(Name of Clerk)

Bill Kinsaul, Clerk, Circuit Court, Bay County

As Clerk of the Court By _____ _Michelle Collar_ As Deputy Clerk

IN THE FOURTEENTH JUDICIAL CIRCUIT COURT,

IN AND FOR BAY COUNTY, FLORIDA


CHRISTOPHER BOWERS,

      PLAINTIFF,

                           CASE NO: *14-426 CA*

    V.                      Civil Division-Jury Trial Demanded

BP EXPLORATION & PRODUCTION

INC., BP p.l.c., BP AMERICA

PRODUCTION COMPANY,

BRITISH PETROLEUM A/k/a BP;

And all agents and persons acting

in concert and participation therewith,

Jointly and Severally,

           DEFENDANTS.

_____/

BILL KINSAUL
CLERK OF COURT
BAY COUNTY, FLORIDA
2014 MAR 31 P 2: 34
FILED


## COMPLAINT FOR DAMAGES

Plaintiff, CHRISTOPHER BOWERS, sues defendants BRITISH
PETROLEUM, and all agents and persons acting in concert and
participation therewith, jointly and severally, and alleges:

This is a complaint for damages against all defendants and their
agents stemming from the April 20, 2010 "Deepwater Horizon Oil"
spill disaster.

1

## JURISDICTION

1.    This is an action for damages which exceed the amount of $15,000.00. Jurisdiction of this Court is invoked pursuant to F.S. § 26.012 (2012), and Art. V, § V (b), <u>Fla. Const.</u> Jurisdiction is further invoked pursuant to F.S. §§ 376.205; 376.313(2009).

2.    **Plaintiff specifically invokes <u>United States Constitution</u>, Amend. X, respectively delegating to the State of Florida, <u>matters of interpretation of state law under the doctrine of</u> <u>state sovereignty</u>. Plaintiff additionally invokes the equity jurisdiction of this Court in all matters as appropriate to this action.**

## VENUE

3.    General venue is claimed pursuant to F.S. §§ 26.012, 47.051(2012) ("Actions against foreign corporations doing business in this state shall be brought in a county where such corporation has an agent or other representative, where the cause of action accrued, or where the property in litigation is located.") Bay County, Florida is the location of where the

Plaintiff resides and the damage, as well as cause of action is alleged to have taken place.

4.   Venue is additionally brought pursuant to the Court's, Jurisdiction over its own navigable waters, according to F.S. § 47.071 (2009).

5.   **Plaintiff specifically invokes United States Constitution, Amend. X, respectively delegating to the State of Florida, matters of interpretation of state law under the doctrine of state sovereignty**. Accordingly, venue is proper laid in Bay County, Florida and **Plaintiff does not consent to a change of venue.**

## PARTIES

6.   At all times material hereto, Plaintiff, Christopher Bowers, is a natural person and citizen of the United States of America. Plaintiff resides within the State of Florida in Bay County, at Panama City Beach (Laguna Beach).

7.   At all-time material hereto, Defendant, British Petroleum (BP and its associated subsidiaries) held the mineral rights to drill for oil, in the location as specified herein[1].

---

[1] The Macondo well is located in the Mississippi Canyon Block 252 in the United States sector of the Gulf of Mexico about 41 miles (66 km) off the Louisiana coast. See also: US Mineral Management Service (MMS), Central Gulf of Mexico Planning Area Lease Sale 206, New Orleans, La.

8.   BP Exploration & Production Inc. ("BPXP") is and was at all material times a business organized under the laws of Delaware with its principal place of business in Warrenville, Illinois and with its principal purpose being oil and gas exploration and production. BPXP is registered to engage in business in Florida, maintains continuous and systemic contacts in Florida, and is subject to personal jurisdiction in Florida. BPXP was designated a Responsible Party as that term is contemplated under Fla. Stat. §376.031(20).

9.   BP p.l.c. (collectively with BPXP referred to herein as "BP") is and was at all material times a British multinational oil and gas company headquartered in London, United Kingdom. BP p.l.c. maintains continuous and systemic contacts in Florida and is subject to personal jurisdiction in Florida. BP p.l.c. publicly acknowledged that it would cover or otherwise make funds available for damages assessed against BPXP as a result of the oil spill, including, but not limited to, damages under OPA.

10.   BP America Production Company ("BP America") is and was at all material times a business organized under the laws of Delaware with its principal place of business in Houston, Texas. BP America contracted with Transocean Ltd. for the drilling of the Macondo Well by the MODU Deepwater Horizon. BP America is registered to conduct business in Florida, maintains continuous and systemic

4

contacts in Florida, and is subject to personal jurisdiction in Florida. At all-time material hereto, Defendant British Petroleum or agents acting in concert and participation therewith, did engage in drilling a well at the location specified in footnote one.

### STATEMENT OF FACTS

11.    On April 20, 2010, a blowout, explosion, and fire occurred aboard the "Deepwater Horizon", a semi-submersible offshore drilling rig, as it was engaged in drilling activities on the "Macondo Well" on the Outer Continental Shelf off the coast of Louisiana. These events led to eleven deaths, dozens of injuries, and a massive discharge of oil into the Gulf of Mexico that continued for nearly three months.

12.    Extensive economic loss, property and individual damage ensued in the States of Louisiana, Mississippi, Alabama, the counties of Chambers, Galveston, Jefferson and Orange in the State of Texas, the counties of **Bay,** Calhoun, Charlotte, Citrus, Collier, Dixie, Escambia, Franklin, Gadsden, Gulf, Hernando, Hillsborough, Holmes, Jackson, Jefferson, Lee, Leon, Levy, Liberty, Manatee, Monroe, Okaloosa, Pasco, Pinellas, Santa Rosa, Sarasota, Taylor, Wakulla, Walton and Washington in the State of Florida, including all adjacent Gulf waters, bays, estuaries, straits, and other tidal or brackish waters within the States of Louisiana, Mississippi, Alabama, and those described counties of Texas or Florida (commonly

known as the "GULF COAST AREAS"), including but not limited to the navigable waters, according to F.S. § 47.071 (2009)**within Bay County, Florida** or the U.S. waters of the Gulf of Mexico and all adjacent bays, estuaries, straits, and other tidal or brackish waters within the Gulf Coast Areas, **including Bay County, Florida.**

13. The aforecited oil spill devastated both tourism and the local economy and business of all affected areas, including the county where the Plaintiff resides.

14. Plaintiff, prior to, and during the time of the oil spill had been, employed, as a HVAC Mechanic and AC Heating Service Technician. Plaintiff, at the time of the filing of this action, is currently employed in such capacity.

**15. The scope of the Plaintiff's employment derives primarily from providing such mechanical and technical service skills to the tourist and property rental industry associated with the beaches of Bay County and Walton County, Florida.**

16. Plaintiff directly supports his two children and himself from the revenue generated by the influx of tourism associated with said local beaches and property rental industry.

**17. At the time of the aforecited oil spill, Plaintiff was employed** with Peaden Mechanical, an AC and Heating Company, in Bay

6

County, Florida. From the dates of January 3rd, 2010 to May 23rd, 2010[2], Plaintiff only earned $ 13,585.13.

18.    Plaintiff's last date of employment with Peaden Mechanical was the 28th day of May, 2010.

19.    Upon the Claimant ending his employment with Peaden Mechanical, he immediately began seeking further employment in the AC and Heating field.

20.    Letters were sent to multiple AC companies asking for confirmation of the Claimant seeking employment.

21.    One of the AC and Heating companies furnished the Claimant with a letter on official company letterhead stating that while the Claimant had experience in the AC and Heating field, they were unable to hire the Claimant due to the downturn in the local economy and lack of work available because of the oil spill. Thus, **claimant would have been employed had it not been for the Defendants oil spill.**

22.    In response to said federal litigation the Defendants have reached a Federal "Settlement Agreement". Defendants have

---

[2] The commonly accepted date of the Deepwater Horizon oil spill is April 20, 2010, at approximately 9:45 pm CDT, wherein gas, oil and concrete exploded up the wellbore onto the deck catching fire. The explosion immediately killed 11 platform workers, injured17 others, another 98 people survived without serious physical injury. See: "Timeline of the Deepwater Horizon oil spill" http://en.wikipedia.org, at page 2 of 7.

structured provisions of such "agreement" specifics to include, but not limited to: **lost earnings claims by numerous types of individual claimants—people who changed jobs, people with multiple jobs, people with seasonal jobs, individual periodic vendors, festival vendors, and people who were offered and accepted employment but had their offer revoked.** Compensation available under the Individual Economic Loss Framework includes lost earnings, RTPs, lost benefits, qualified training costs, qualified job search costs, and one-time non-recurring event commission compensation.

23.    On the 13th of October, 2010 the Claimant filed a claim with the Defendant British Petroleum's now defunct Gulf Coast Claims Facility (GCCF) and wrote a hardship letter. Claimant was unemployed from the 28th day of May, 2010 and past the date the claim for compensation was filed on the 13th day of October, 2010. The GCCF issued a denial of compensation to the Claimant dated December 7th, 2010.

24.    The Defendant's, through the federal settlement agreement, have compensated other persons for lost wages from other forms of related employment. (e.g., condo staff, maintenance workers, groundskeepers, household cleaning staff, restaurant workers, beach chair and bike rental workers, local store clerks, etc.). Plaintiff's scope of employment is similarly situated.

8

25.    Plaintiff has incurred expense in both money and time in attempting to properly receive meaningful BP administrative review and compensation related to his claim.

26.    No relief to the Plaintiff has been provided, despite the fact his experience and trade and the services he provides are directly connected to the beaches and tourist economy.

27.    Plaintiff has no other timely, meaningful, and just form of review or compensation available.


## COUNT I

28.    Defendants, contrary to Art. I, §2. Basic Rights, of the Florida Constitution (right to be rewarded for industry), directly or proximately, by their acts or inactions, through malfeasance, misfeasance, through negligence or otherwise, as complained of herein, impacted upon the Plaintiff's right to be employed and rewarded for his industry.

29.    Defendants did so by causing an oil spill which devastated the local economy thereby directly impacting upon all industry, trades and service sectors, associated with tourist, beach, and rental properties within the area in which the Plaintiff resides and works. Accordingly, Plaintiff could not obtain employment in his chosen profession or be rewarded for industry.

9

## COUNT II

30.    Plaintiff adopts, reavers and re-alleges each and every allegation set forth in the Statement of Facts and Count I and alleges:

31.    The policies and procedures utilized by Defendant British Petroleum's now defunct Gulf Coast Claims Facility "GCCF", for compensating individuals and businesses for the oil spill have proven to be inadequate, unfair, and lacking credibility. **Said compensation center was closed.**[3]

32.    Plaintiff states the same defects are presently true, as to the current claim methods and procedural center now employed by Defendant British Petroleum and the current Federal court appointed claim center.

33.    Plaintiff alleges the Defendants have acted in **deliberate bad faith** in the review of his administrative claim which was submitted on multiple occasions to them. Defendant British Petroleum has persisted in demanding the Plaintiff produce documentation which he does not possess and is immaterial to his loss of wages claim. Plaintiff alleges such tactics are undertaken by the Defendant in **an effort to expire the statute of limitations for the filing of an action; by indicating a false hope that an**

---

[3] Defendants are currently challenging a recent ruling by the federal court regarding the interpretation of certain protocols established in the economic and property damages settlement agreement.

administrative level claim may resolve the Plaintiff's loss; by providing the Plaintiff false or misleading information;

### COUNT III-BREACH OF STATUTORY DUTIES AND OBLIGATION

34. Plaintiff adopts, reavers and re-alleges each and every allegation set forth in the Statement of Facts and Count I through II and alleges:

35. Section 376.302(1) (a), Florida Statutes (2005), makes it unlawful for any person "to discharge pollutants or hazardous substances into or upon the surface or ground waters of the state or lands, which discharge violates any departmental 'standard' as defined in § 403.803(13)".

36. Section 376.301(13), Florida Statutes (2005), provides that a "discharge" means, but is not limited to "any spilling, leaking, seeping, pouring, misapplying, emitting, emptying, releasing, or dumping of any pollutant or hazardous substance which occurs **and which affects lands and the surface and ground waters of the state not regulated by § 376.011-376.21** [emphasis added]. Thus, §§ 376.30-376.319 (2005) applies to all surface and ground waters of Florida not already covered by the "Pollutant Discharge Prevention and Control Act,"§§ 376.011-376.21 (2005) enacted in 1970, some 13 years before the enactment of §§ 376.30-376.319 (2005) in 1983.

37. Section 376.301(21) (2005) defines "hazardous substances".

38.   Many of the chemicals and compounds found in the discharge from the "Deepwater Horizon-Macondo Well", that is the subject of this complaint, are named as hazardous substances/prohibited "hazardous substances" that Section 376.301 (21) (2005) incorporates as Florida law.

39.   Section 376.301(36) (2005) defines "pollutants" as including a host of petroleum products..."

40.   Although Chapter 376 does not by its own terms define "surface...waters of the state"' Florida's Department of Environmental Protection (DEP) has provided the following definitions (Rule 62-780.200, F.A.C.):

(46)'Surface water" **means water upon the surface of the earth, whether contained in bounds created naturally or artificially or diffused.** Water from natural springs shall be classified as surface water when it exits from the spring unto the earth's surface. [emphasis added]

41.   In Rule 62-780.200(52), the DEP defines "waters" or "waters of the state' by adopting the definition set forth in Section 403.031(13), Florida Statutes (2005):

[Waters or waters of the state] include, but are not limited to, rivers, lakes, streams, springs, impoundments, wetlands, and **all other waters or bodies of water, including fresh, brackish, saline, tidal, surface or underground waters...**[emphasis added]

42.    The foregoing definition of "waters' or "waters of the state" includes that portion of Panama City Beach and Bay County, Florida into which defendant's pollutants and hazardous substances flowed.

43.    Florida Statutes, §§ 376.30-376.19 (2005), which was enacted in 1983, deals with pollution and contamination of Florida surface and ground waters, and is completely separate from Florida's Pollutant Discharge Prevention and Control Act, §§ 376.011-376.21 (2005), which was enacted in 1970, 13 years before the surface and ground water pollution law upon which this count is based.

44.    While the "Pollutant Discharge Prevention and Control Act" enacted in 1970 contains a limited definition of "damage", **the surface and water pollution law upon which this count is based contains no such limited definition of damage.**

45.    In *Aramark Uniform and Career Apparel, Inc. v. Easton*, 894 So.2d 20 (Fla. 2005), the Florida Supreme Court held that §§ 376.30-376.319, Florida Statutes (2005) creates a strict liability cause of action for damages, and does not limit damages to the "cleanup or removal of the prohibited discharge" as did the courts in *Mostoufi v. Presto Food Stores, Inc.*, 618 So.2d 1`372 (Fla. 2d DCA 1993) and *Italiano v. Jones Chemicals, Inc.*, 908 F.Supp. 904 (M.D. Fla. 1995). In so holding, the Florida Supreme Court specifically overruled the Second District's opinion in *Mostoufi*,

*supra*, which was the basis of the federal court's opinion in *Italiano*, *supra*.

46.    Defendant BP was the owner operator and/or controlling interest of an oil platform/drilling rig known as the "Deepwater Horizon", leased or otherwise operated by the Defendant and his agents which, on or about April 20, 2010 began unlawfully to discharge pollutants and hazardous substances which ultimately did flow into or upon the surface or ground waters of the State of Florida or the state's lands in Bay County, Florida.

47.    Defendant BP is the party responsible for the discharge and is liable to Plaintiff for all damages resulting from the aforesaid unlawful discharge of pollutants and/or hazardous substances into or upon the waters of the State of Florida or upon the lands of the State of Florida, **including all collateral consequences flowing therefrom, with said unlawful discharge damaging Plaintiff.**

48.    Pursuant to Section 376.313 (6), Florida Statutes,
"(6) The court, in issuing any final judgment in any such action, may award costs of litigation (including reasonable attorney's and expert witness fees) to any party, whenever the court determines such an award is in the public interest."

   **WHEREFORE,** Plaintiff demands:

   (a)   That the Court take full and complete jurisdiction of the parties and the subject matter jurisdiction hereof, including equity jurisdiction of this action;

14

(b)   The Court impanel a jury to try all issues triable as a matter of Florida Constitutional right, pursuant to Florida Constitution, Art. I, §§ 21, 22. ;

(c)   That the Court award Plaintiff damages arising from the unlawful discharge of pollutants and/or hazardous substances by the Defendants;

(d)   That the Court enter an Order taxing all costs, including all related expenses, with interest, against the Defendants;

(e)   The Court enter an award pursuant to Section 376.313 (6), Florida Statutes;

(f)   That the Court grant such other and further relief as to the Court may appear just and proper.

## COUNT IV-COMMON LAW STRICT LIABILITY

49.   Plaintiff adopts, reavers and re-alleges each and every allegation set forth in the Statement of Facts and Count I through III and alleges:

50.   This is a count for common law strict liability.

51.   The Legislature of the State of Florida has expressly found as follows in Section 376.30(2)(a-c), Florida Statutes (2005):

2(a). The storage, transportation and disposal of pollutants…and hazardous substances within the jurisdiction of the state and state waters is a hazardous undertaking;

15

2(b). Spills, discharges, and escapes of pollutants,…and hazardous substances that occur as a result of procedures taken by private and governmental entities involving the storage, transportation and disposal of such products pose threats of great danger and damage to the environment of the state, the citizens of the state, and to other interests deriving livelihood from the state;

2(c). Such hazards have occurred in the past, are occurring now, and present future threats of potentially catastrophic proportions, all of which are expressly declared to be inimical to the paramount interests of the state as set forth in this section; and…

2(d). Such state interests outweigh any economic burdens imposed by the Legislature upon those engaged in storing, transporting, or disposing of pollutants,…and hazardous substances and related activities.

52. The Legislature of the State of Florida has also expressly found as follows (Section 376.021(b-d), Florida Statutes (2005):

3(b) Spills, discharges, and escapes of pollutants occurring as a result of procedures involved in the transfer, storage, and transportation of such products pose threats of great dander and damage to the environment of the state, to owners and users of shore front property, to public and private recreation, to citizens of the state and other interests deriving livelihood from marine-related activities, and to the beauty of the Florida coast;

3(c) Such hazards have frequently occurred in the past, are occurring now, and present future threats of potentially catastrophic proportions, all of which are expressly declared to be inimical to the paramount interests of the state as herein set forth; and

3(d) Such state interests outweigh any economic burdens imposed by the Legislature upon those engaged in transferring pollutants and related activities.

53. The drilling, and subsequent discharge of pollutants, contaminants, hazardous substances, (including substances that in quantities are or may be potentially harmful or injurious to

human or health welfare, animal or plant life, or property and which may unreasonably interfere with the enjoyment of life or property), in a facility within the waters of the State of Florida,(a major source of public and private business and recreational opportunities for the citizens and workers of the State of Florida), is abnormally dangerous and/or ultra-hazardous activity based upon both the foregoing legislative findings and following common law factors:

(a)   It involves a high degree of risk of some harm to the person, land or chattels of others;

(b)   The harm which results from it is likely to be great;

(c)   The risk cannot be eliminated by the exercise of reasonable care;

(d)   The activity is not a matter of common usage;

(e)   The activity is inappropriate to the place where it is carried on; and

(f)   While the activity is of value to the community, it is outweighed by the abnormally dangerous nature of the undertaking.

54.   Because the Defendant's actions within the waters of the State of Florida constitutes both a legislatively determined and common law abnormally dangerous or ultra-hazardous activity,

the Defendants are strictly liable for all damages proximately caused by such activities.

**WHEREFORE,** Plaintiff demands:

(a)   That the Court take full and complete jurisdiction of the parties and the subject matter jurisdiction hereof, including equity jurisdiction of this action;

(b)   The Court impanel a jury to try all issues triable as a matter of Florida Constitutional right, pursuant to Florida Constitution, Art. I, §§ 21, 22. ;

(c)   That the Court award Plaintiff damages arising from the unlawful discharge of pollutants and/or hazardous substances by the Defendants;

(d)   That the Court enter an Order taxing all costs, including all related expenses, with interest, against the Defendants;

(e)   The Court enter an award pursuant to Section 376.313 (6), Florida Statutes;

(f)   That the Court grant such other and further relief as to the Court may appear just and proper.

## COUNT V-COMMON LAW NEGLIGENCE

55. Plaintiff adopts, reavers and re-alleges each and every allegation set forth in the Statement of Facts and Count I through IV and alleges:

56.  This is a count for common law negligence.

57.  Defendant BP was the owner operator and/or controlling interest of an oil platform/drilling rig known as the "Deepwater Horizon", leased or otherwise operated by the Defendant and his agents which, on or about April 20, 2010 began unlawfully to discharge pollutants and hazardous substances which ultimately did flow into or upon the surface or ground waters of the State of Florida or the state's lands in Bay County, Florida.

58.  Defendant BP owed a duty to the Plaintiff, to properly maintain and operate the oil platform/drilling rig in a safe, non-polluting manner.

59.  Defendant BP, through past experience and having engaged in similar business conduct, knew or should have known of the existing dangers and possible discharge of hazardous substances, and subsequently failed to warn the public of, or cease engaging in its hazardous activity.

60.  As a direct and proximate result of the negligent conduct of Defendant BP, Plaintiff sustained the following damages:

    (a)  Loss of the ability to produce income and financial support for his family in his chosen profession;

    (b)  An inability to obtain employment due to the resulting impact the defendant's actions had upon the local economy;

19

(c)  Loss of use of recreational beach facilities and activities with his family.

**WHEREFORE,** Plaintiff demands:

(a)  That the Court take full and complete jurisdiction of the parties and the subject matter jurisdiction hereof, including equity jurisdiction of this action;

(b)  The Court impanel a jury to try all issues triable as a matter of Florida Constitutional right, pursuant to Florida Constitution, Art. I, §§ 21, 22. ;

(c)  That the Court award Plaintiff damages arising from the unlawful discharge of pollutants and/or hazardous substances by the Defendants and acts as complained of herein;

(d)  That the Court enter an Order taxing all costs, including all related expenses, with interest, against the Defendants;

(e)  The Court enter an award pursuant to Section 376.313 (6), Florida Statutes;

(f)  That the Court grant such other and further relief as to the Court may appear just and proper.

## DEMAND FOR JURY TRIAL

61.   Plaintiff demands trial by jury on all issues so triable.


                                        Respectfully Submitted;


                                        Christopher P. Bowers,
                                        Plaintiff, Pro Se
                                        315 15th Street
                                        Panama City Beach,
                                        Florida 32413

                                        Date Signed:
                                        3-31-14


21